UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20787-CIV-SEITZ/TURNOFF

WORLD FUEL SERVICES, INC.

        Plaintiff,

vs.

JOHN E. RETZNER OIL COMPANY, INC.,

        Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment [DE 42] on its breach of contract claim in this diversity action.[1] In February 2016, Defendant terminated a fixed price forward contract, whereby Defendant agreed to purchase from Plaintiff monthly quantities of fuel between January and December 2016. There is no dispute as to the material facts. The issue is a legal one—whether, as a matter of law, the agreement is a "take or pay" contract entitling Plaintiff to the full contract price, or whether Plaintiff's damages should be limited to its actual losses under the Uniform Commercial Code. Based on a thorough review of the law and the record evidence in light most favorable to Defendant, the agreement is a true take or pay contract and Plaintiff is entitled to the full contract price minus the sums paid.

## BACKGROUND

Plaintiff World Fuel Services is a Texas corporation engaged in the business of supplying petroleum fuel to wholesalers. [DE 1 ¶ 3.] Defendant Retzner Oil is an Indiana

---

[1] Plaintiff advises that Counts II through IV of its Complaint [DE 1] are no longer at issue and that, according to Defendant, Defendant's Fourth Affirmative Defense regarding unenforceable penalties is no longer at issue as well. [DE 42 at 3 n. 1.] Defendant does not dispute Plaintiff's claim.

corporation engaged in the sale of petroleum to commercial consumers. [DE 16 ¶ 4.]

The parties have stipulated to the material facts. [DE 41.] Plaintiff and Defendant signed a series of agreements[2], whereby Defendant agreed to purchase, and Plaintiff agreed to sell, 630,000 gallons of ultra-low sulfur diesel ("fuel") every month from January to December 2016 at a fixed price of $2.0073 per gallon. [DE 41 ¶ 4.] To ensure it could cover its contract with Defendant, Plaintiff entered into a "hedging" contract with a separate supplier to purchase 630,000 gallons of fuel each month in 2016. *Id.* ¶ 6.

In January 2016, Defendant paid for and lifted[3] 637,313 gallons of fuel (101% of the monthly amount) under the contract. *Id.* ¶ 10. From February 1, 2016 through February 17, 2016, Defendant paid for and lifted 375,041 gallons of fuel (60% of the monthly amount) under the contract. *Id.* ¶ 11. During those two months, Defendant lost money from its sale of the fuel due to the drastic decline in fuel prices in 2015. *Id.* ¶¶ 7, 13. On February 18, 2016, Defendant sent Plaintiff a letter terminating the contract and refusing to lift any additional fuel for the remainder of the year. *Id.* ¶ 14. The letter claimed Plaintiff had breached the contract on six occasions: (1) January 15, 2016; (2) January 19, 2016; (3) January 22, 2016; (4) February 4, 2016; (5) February 8, 2016; and (6) February 15, 2016. *Id.* ¶ 15. Defendant has not lifted any fuel under the contract since February 18, 2016, *Id.* ¶ 12; nor has it made any payments towards the remaining fuel.

*The Parties' Agreements*

Plaintiff operates the World Fuel Services, Inc. Price Risk Management ("PRISM")

---

[2] The contract documents include: (i) Master Agreement for Fixed Forward Price Purchase and Sale Transactions, (ii) World Fuel Services, Inc. Price Risk Management Program and its Exhibit A, World Fuel Services, Inc. Price Risk Management Confirmation Form, and (iii) Road Fuels General Terms and Conditions. The parties stipulate these are the only documents relevant to this case. [DE 41 ¶¶ 1-2.]

[3] "Lifting" is a term in the fuel industry referring to a purchaser's receipt of fuel from the terminal. [DE 41 ¶ 8.]

2

Program, whereby Plaintiff offers to sell fuel at a fixed price for a set time period. The World Fuel Services, Inc. Price Risk Management Program ("PRISM Agreement") acknowledges that in order for Plaintiff to offer fuel at a fixed price, it must enter into separate purchase agreements with third-party suppliers. [DE 14-1 at 7.] Accordingly, buyers under the program agree to purchase fuel in specific amounts as specified under the contract. *Id.* The PRISM Agreement, Provision VI, states:

> This is a 'take or pay' agreement. In the event that the actual monthly volume is less than the specified quantity during any Delivery Period, Purchaser agrees that failure by Purchaser to take receipt of 100% of the designated quantity of product within the applicable Delivery Period and at the location, all as set forth in the Order Confirmation Form, will not release Purchaser from its obligation to pay Seller as if Purchaser had taken receipt of 100% of the product in full compliance with the terms set forth in the subject Order Confirmation Form. Seller shall, therefore, have the right to invoice Purchaser, as if Purchaser had fully complied with the terms of the Order Confirmation Form, and Purchaser hereby agrees to timely pay Seller in accordance with said invoice(s).

[DE 41-1 at 7.]

Exhibit A to the PRISM Agreement is the World Fuel Services, Inc. Price Risk Management Confirmation Form ("Confirmation Form"), which specifies the terms of each PRISM transaction. [DE 41-1 at 4.] The Confirmation Form constitutes an amendment to the PRISM Agreement and is incorporated into the PRISM Agreement by reference. *Id.* Buyers under the program also sign a general Master Agreement for Fixed Forward Price Purchase and Sale Transactions ("Master Agreement"), which reiterates, in all caps, that Plaintiff will enter into agreements with third-party suppliers to meet its obligations under the Program.

Along with the Road Fuels General Terms and Conditions ("General Terms"), these documents form the agreement at issue. If certain terms conflict between the documents, the Master Agreement provides that the PRISM Agreement and its Confirmation Form take precedence. [DE 41-1 at 2.]

3

STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When the material facts are undisputed and the only questions to be decided are questions of law, summary judgment may be granted. *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011).

DISCUSSION

A. **Defendant materially breached the contract.**

The essential issues in this case are whether Defendant materially breached the parties' agreement, and if so, is Plaintiff entitled to recover the full contract price minus amounts already paid. As to the alleged breach, the parties have stipulated that they signed a fuel purchase contract, whereby Defendant would purchase from Plaintiff 630,000 gallons of fuel each month in 2016. [DE 41 ¶ 4.] The parties also stipulated that Defendant terminated the contract on February 18, 2016. [DE 41 ¶ 14.] Plaintiff claims, and Defendant does not dispute, that Defendant has refused to pay for the remaining fuel negotiated under the contract. Thus, the first question to be decided is whether Defendant's failure to pay for the remaining fuel constitutes a material breach. To constitute a material breach, a party's non-performance must go to the essence of the contract. *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 849 (11th Cir. 2013).

The terms of the contract state: "failure by Purchaser [Defendant] to take receipt of 100% of the designated quantity of product within the applicable [month] . . . will not release Purchaser from its *obligation to pay* Seller [Plaintiff] as if Purchaser had taken receipt of 100% of the product . . . ." [DE 41-1 at 7 (emphasis added).] Defendant was required to pay for

4

630,000 gallons each month regardless of whether it took the full amount. Defendant's refusal to pay for the remaining fuel therefore constitutes a material breach of the contract.

Defendant has asserted as its Third Affirmative Defense that Plaintiff breached the contract first by failing to provide the agreed upon quantity and type of fuel.[4] [DE 16 at 13.] However, Defendant did not address the issue in its response nor provide any facts as to Plaintiff's alleged breach.[5] Moreover, the contract does not specify a particular amount of fuel to be delivered each day. Rather, it requires Defendant to take fuel "in approximately equal amounts prorated over the [month]." [DE 41-1 at 6.] This means Plaintiff was required to deliver enough fuel at sufficient intervals to allow Defendant to take 630,000 gallons ratably. The undisputed facts establish that Plaintiff did so.

Defendant lifted 637,313 gallons of fuel in January [DE 41 ¶ 10], through 92 lifts ranging between 3,000 to 7,505 gallons per lift.[6] In February, Defendant lifted 375,041 gallons of fuel over the course of 58 lifts before terminating the contract on February 18. [DE 41 ¶¶ 11, 14; DE 41-2.] While the termination letter states Plaintiff breached its obligations in both January and February, Defendant offers no evidence to explain how Plaintiff's deliveries were insufficient or otherwise a material breach of the contract. Defendant has the burden to establish its affirmative defense and because Defendant has failed to meet its burden, the affirmative defense is dismissed.

---

[4] Plaintiff denies the allegation and argues the contract does not require a specific quantity of fuel to be delivered on a particular day. [DE 42 at 5.]

[5] Nor does Defendant provide any evidence or discussion to support either its First Affirmative Defense regarding Plaintiff's alleged failure to state a claim, or its Fifth Affirmative Defense regarding supervening impracticability. Thus, these defenses are waived.

[6] The Lifting Report specifies all individual lifts made by Defendant under the conctract. [DE 41 ¶ 9.]

### B. Plaintiff is entitled to full payment for all remaining fuel under the contract.

The disputed issue is a question of law—what does the parties' written agreement require in damages given the Defendant's material breach. Plaintiff contends the agreement by its express terms is a "take or pay" contract that entitles Plaintiff to payment for all remaining fuel the agreement required it to provide. Defendant disagrees, arguing the contract is not take or pay in substance because (1) its terms do not contemplate the alternative performance options required in take or pay agreements, and (2) the contract lacks a make-up clause. Thus, according to Defendant, damages should be based on Plaintiff's actual losses in accordance with FLA. STAT. 672.709, which codifies the Uniform Commercial Code.

Contract construction is a question of law appropriately decided on summary judgment. *Ferox, LLC v. ConSeal International, Inc.*, 175 F. Supp. 3d 1363, 1371 (S.D. Fla. 2016) (citing *Saregama India*, 635 F.3d at 1290). Contract terms must be interpreted in the context of the entire agreement and no contract term should be construed in conflict with another if possible. *Ferox*, 175 F. Supp. 3d at 1373; *see also United States v. Pielago*, 135 F.3d 703, 710 (11th Cir. 1998) ("When two contract terms conflict, the specific term controls over the general one."). Where the plain language of a contract is unambiguous, the written terms are the best evidence of the parties' intent, and the plain meaning of those terms controls. *Spungin v. GenSpring Family Offices, LLC,* 883 F. Supp. 2d 1193, 1198 (S.D. Fla. 2012) (citing *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So.2d 739, 739 (Fla 1st DCA 1989)).

*1. The terms of the contract create a "take or pay" obligation.*

Take or pay agreements are standard in the oil industry. [DE 45 at 3.] A take or pay contract obligates a buyer to purchase a specified amount of a fuel at a specified price and, if it is unable to do so, to pay for that amount. *See Mobil Oil Exploration & Producing Southeast Inc. v. United Distribution Companies*, 498 U.S. 211, 229 (1991) ("A take-or-pay contract

6

obligates a pipeline to purchase a specified volume of gas at a specified price and, if it is unable to do so, to pay for that volume.") Such agreements are alternative performance contracts, whereby buyer has the option to take or not to take the fuel, but it must pay the contracted amount regardless. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 689 (10th Cir. 1991) Buyer is compensating seller for his efforts and promise to supply the fuel rather than the fuel itself. *Universal Res. Corp. v. Panhandle E. Pipe Line Co.*, 813 F.2d 77, 80 (5th Cir. 1987); *see also Prenalta*, 944 F.2d at 689 (noting that "payments made pursuant to the take-or-pay provision . . . are not payments for the sale of gas" until applied at the time of sale). Courts therefore view buyer's payment as its promise in the agreement rather than a measure of damages.[7] *Universal Res. Corp.*, 813 F.2d at 80 n.4.

Three separate documents form the parties' single agreement: (i) the Master Agreement, dated January 13, 2015, (ii) the PRISM Agreement, dated March 13, 2014, and its Exhibit A, the Confirmation Form, dated January 12, 2015, and (iii) the General Terms. [DE 41 ¶¶ 1.] If terms conflict between the documents, the PRISM Agreement and its Confirmation Form take precedence. [DE 41-1 at 2.]

The PRISM Agreement states:

> This is a 'take or pay' agreement. In the event that the actual monthly volume is less than the specified quantity during any [month], Purchaser agrees that failure . . . to take receipt of 100% of the designated quantity of product . . . will not release Purchaser from its obligation to pay Seller as if Purchaser had taken receipt of 100% of the product . . . . Seller shall, therefore, have the right to invoice Purchaser, as if Purchaser had fully complied with the terms of the Order Confirmation Form, and Purchaser hereby agrees to timely pay Seller in accordance with said invoice(s).

---

[7] The general purpose of the take-or-pay clause is to apportion the risks of fuel production and sales between the buyer and seller. The seller bears the risk of production or supply. To compensate the seller for that risk, and ensure a continuous cash flow, buyer agrees to take, or pay for if not taken, a minimum quantity of gas. The buyer bears the risk of market demand. The take-or-pay clause insures that if the demand for gas goes down, seller will still receive the price for the Contract Quantity delivered each year. *Universal Res.*, 813 F.2d at 80.

[DE 41-1 at 7.] This is classic take or pay language that spells out Defendant's obligation to pay for the monthly amount fuel regardless of whether Defendant chooses to take the fuel. *See Prenalta*, 944 F.2d at 687 (quoting similar take or pay language); *Universal Res. Corp.*, 813 F.2d at 80 (noting similar take or pay language is "common" and "enforceable"). Moreover, the language confirms that the parties' agreement is an alternative performance contract. Defendant's option to pay for and take the fuel, or pay the value of the fuel without taking it, as well as Plaintiff's obligations to supply a guaranteed amount of fuel at a fixed price, are clearly stated in the PRISM Agreement. Read together, Defendant's bargained-for obligation to pay whether or not it takes the fuel is clear and unambiguous.

Defendant attempts to circumvent these express terms by pointing to the Master Agreement's use of the words "purchase" and "damages." The Master Agreement states:

> Buyer agrees and acknowledges that in order for seller to offer the product at a fixed price over the applicable delivery period, seller has entered into or may enter into one or more hedging transactions with third parties. In the event that Buyer purchases less than the full contracted quantity for any reason . . . Buyer shall be liable to Seller for all damages incurred . . . .

[DE 41-1 at 2-3.] Defendant interprets the term "purchases" to mean exclusively its obligation to take *and* pay; and anything less than taking *and* paying for the fuel would be considered a breach. However, this interpretation directly conflicts with the clear take or pay language in the PRISM Agreement. To the extent terms conflict among the contract documents, the terms of the PRISM Agreement—where the take or pay language is found—govern. Moreover, Defendant's argument ignores a basic principle of contract construction, namely that when two contract terms conflict, the specific term controls over the general term. *Pielago*, 135 F.3d at 710. The Master Agreement references Defendant's general obligation to "purchase" the contracted amount of fuel; the PRISM Agreement references Defendant's specific obligation to "pay" for the contracted fuel even if it elects not to take it. Because the PRISM Confirmation

8

states a more specific obligation, the take or pay language governs.

Defendant separately points to a provision in the PRISM Agreement that states: "If the Purchaser does not lift the contracted barrels ratably as stated above. [sic] It shall be considered a material breach of this Agreement and any Transactions related thereto." [DE 41-1 at 6-7.] Read in context of the entire paragraph,[8] this provision discusses Defendant's obligation to take fuel in approximately equal amounts each month—not its obligation to pay. The provision is not relevant to the take or pay issue.

### 2. *The lack of a make up clause does not negate the clear take or pay language.*

Take or pay contracts often times include make up clauses, whereby the buyer may recoup the fuel paid for but not taken within a certain amount of time. *See Prenalta*, 944 F.2d at 687 (contract granted buyer credit for gas paid for but not taken and permitted buyer to recoup the gas over the term of the contract); *Universal Res.*, 813 F.2d at 80 (same). However, take or pay agreements are enforced without such make up clauses. *See International Minerals and Chemical Corp. v. Llano, Inc.*, 770 F.2d 879, 881-82 (10th Cir. 1985) (contract required buyer to purchase minimum amount of gas with no make-up clause); *Sabine Corp. v. ONG Western, Inc.*, 725 F. Supp. 1157, 1164-66 (W.D. Okl. 1989) (same).

Defendant argues the lack of a make up clause negates the unambiguous take or pay language of the contract. This argument is without merit. Defendant is an experienced wholesaler in the fuel supply industry where take or pay contracts are standard. Thus it presumably would have requested that a make up clause be included in the contract should one

---

[8] The full paragraph reads:

> Purchaser shall lift PRISM related volumes in approximately equal amounts prorated over the Delivery Period, unless otherwise agreed by the parties in writing. If the Purchaser does not lift the contracted barrels ratably as stated above. [sic] It shall be considered a material breach of this Agreement and any Transactions related thereto.

9

have been required. Moreover, the absence of a make up option does not affect Defendant's obligation to pay. *See Sabine Corp.*, 725 F. Supp. at 1184 ("An assumption that [Defendant] cannot recoup such payments does not render the take-or-pay provision or the payment obligation under the contract a penalty or a liquidated damages provision."). The take or pay language remains enforceable.

    3. *Plaintiff is entitled to an award of $13,157,769.20.*

Breach of a take or pay agreement entitles the non-breaching party to payments it would have received under the contract with no duty to mitigate damages. *See Prenalta*, 944 F.2d at 690 (calculating seller's damages at the value of the contract less any amounts already paid). Defendant was obligated to pay for 630,000 gallons of fuel each month at a fixed price of $2.0073 per gallon. [DE 41 ¶ 4.] Defendant paid for the entire fuel requirement for the month of January as well as 375,041 gallons of fuel for the month of February. *Id.* ¶¶ 10-11. Defendant has not paid for the remaining 6,554,959 gallons of fuel. At the contracted price per gallon, Plaintiff is thus entitled to $13,157,769.20 in damages. Accordingly, it is

ORDERED THAT

(1)    Plaintiff's Motion for Summary Judgment [DE 42] is **GRANTED**. A final judgement will be entered by separate order.

(2)    All pending motions not ruled on are **DENIED AS MOOT**.

(3)    This case is **CLOSED**.

**DONE AND ORDERED** in Miami, Florida this 17th day of January, 2017.

                                                          */s/ Patricia A. Seitz*
                                                        PATRICIA A. SEITZ
                                                        UNITED STATES DISTRICT JUDGE

cc: Counsel of Record